IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ramon Solano Rodriguez,        :      Criminal No. 2:04-cr-00062(1)
                                     (Civil Case No. 2:09-cv-00005)

            Petitioner         :

         v.                       :      Judge Marbley

United States of America,          :      Magistrate Judge Abel

            Respondent       :

# Report and Recommendation

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the instant petition and memorandum in support, the return and supplemental return of writ, petitioner's response and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that counsel be appointed to represent petitioner at an evidentiary hearing on his claim that he was denied the effective assistance of counsel because his attorney failed to provide adequate advice pretrial regarding the sentencing ramifications of proceeding to trial and testifying on his own behalf and because his attorney advised him to go to trial in view of the lack of strength of the government's case against him as he would be sentenced the same regardless. The Magistrate Judge further **RECOMMENDS** that the remainder of petitioner's claims be **DISMISSED**.

## Facts and Procedural History

On April 15, 2004**,** petitioner was indicted on two counts of possession with intent to distribute over 5 grams of cocaine base, one count of possession with intent to distribute marijuana, and one count of possession of a firearm which had been shipped and transported in interstate commerce knowing and having reasonable cause to believe the firearm had been stolen.  Doc. No. 8.  On May 28, 2004, a superseding indictment was filed charging petitioner with conspiracy to possess with intent to distribute over 500 grams of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(ii); ,making available for use premises for unlawful storage and distribution of cocaine and crack cocaine, in violation of 21 U.S.C. §§856(a)(2) and 18 U.S.C. 2; two counts of possession with intent to distribute over 5 grams of cocaine base, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(iii), possession with intent to distribute marijuana, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D); and possession of a firearm which had been shipped and transported in interstate commerce, in violation of 18 U.S.C. §§922(j) and 924(a)(2).  Doc. No. 21.  petitioner proceeded to jury trial.  Doc. No. 33.  On August 4, 2004, he was found guilty, of all offenses charged, with the exception of Count 6 of the Indictment, which was dismissed.  *See Trial Transcript, Volume I*, at 2; Doc. No. 37.  On September 6, 2005, the Court sentenced petitioner to an aggregate term of 168 months incarceration plus four years supervised release.  Doc. No. 52.

> [Petitioner]... appeal[ed] the district court's denial of his motion for acquittal with regard to Counts 1 and 3 of his conviction on five counts of an indictment charging him with conspiracy to

> distribute cocaine, maintenance of a "crack house," and possession with intent to distribute cocaine, cocaine base, and marijuana. The defendant contends that the evidence at trial was insufficient to establish both (1) the existence of a conspiracy and his participation in it and (2) his constructive possession of the cocaine base. The defendant also argues for the first time on appeal that the trial court violated the Court Interpreters Act by not adequately assessing whether the defendant needed the assistance of an interpreter and asks that this court remand for a more thorough examination of whether an interpreter was needed..

*United States v. Rodriguez*, 211 Fed.Appx. 467, 2006 WL 3780369 (6th Cir. December 22, 2006).  On December 22, 2006, the United States Court of Appeals for the Sixth Circuit affirmed the District Court's judgment.  *Id.*  On January 7, 2008, the United States Supreme Court denied petitioner's petition for a writ of *certiorari. Rodriguez v. United States*, 552 U.S. 1102 (2008).  On February 10, 2009, the Court granted petitioner's motion for reduction of sentence pursuant to 18 U.S.C. § 3582, and reduced petitioner's sentence from 168 months to 135 months imprisonment.  Doc. No. 73.

On January 6, 2009, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2255.  He asserts as follows:

> 1.   Petitioner was denied his Sixth Amendment right to effective assistance of counsel due to counsel's failure to move for dismissal based on the violation of petitioner's right to a speedy trial under the speedy trial act.
>
> 2.   Petitioner was denied his Sixth Amendment right to effective assistance of counsel due to counsel's erroneous advice to proceed to trial versus accepting the government's proposed plea agreement.
>
> 3.   Petitioner was denied his Sixth Amendment right to

effective assistance of counsel during the guilt phase of his proceeding.

4. Petitioner was denied his Sixth Amendment right to effective assistance of counsel due to counsel's failure to challenge the erroneous criminal history determination; alternatively, petitioner is entitled to resentencing due to amendment 709 to the USSG.

It is the position of the respondent that petitioner's claims are without merit.

## Claim One

In claim one, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to file a motion to dismiss the charges under the Speedy Trial Act. In support of this claim, petitioner has submitted his own affidavit which indicates in relevant part:

> At no time prior to, during, or after my trial did either of my attorneys ever inform me of my rights to a speedy trial under the speedy Trial Act. Had I been so informed, I would have insisted on counsel filing a motion to dismiss and/or raising the violation on direct appeal.

*Affidavit of Ramon Solano Rodriguez.*

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

4

> errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington, supra,* 466 U.S. at 687; *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697.

Under the Speedy Trial Act, a criminal defendant's trial must commence within seventy days of the filing date of the indictment or date of the defendant's initial appearance before a judicial officer, whichever is later.  18 U.S.C. § 3161(c)(1).  If a defendant is not brought to trial within the time limit required by §  3161(c),

> as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof supporting such motion, but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under sub-paragraph 3161(h)(3). In determining whether to dismiss the

> case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

18 U.S.C. §3162.  Certain periods of time are excluded from the speedy trial clock.  *See* 18 U.S.C. §3161(h).  Specifically, 18 U.S.C. §3161(h)(5) provides:

> If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitations would commence to run as to the subsequent charge had there been no previous charge.

18 U.S.C. § 3161(h)(5).  "Thus, the Act permits the exclusion of time between the dismissal of an indictment and the subsequent indictment or appearance before a judge on the new charge (whichever is later)."  *United States v. McKay,* 30 F.3d 1418 (11th Cir. 1994).  The filing of a superseding indictment, even if not accompanied by a motion to dismiss the original indictment, also "triggers an exclusion under section 3161(h)(6).  *Id.,* citing *United States v. Roman*, 822 F.2d 261 (2nd Cir. 1987); *United States v. Van Someren*, 118 F.3d 1214, 1219 (8th Cir. 1997); *United States v. Peatross*, 2007 WL 45915 *3 n.5 (E.D. Mich. Jan. 5, 2007). Additionally, any delay resulting from the filing of a pretrial motion, from the date of the filing of the motion through the conclusion of the hearing on, or disposition of the motion, also is excluded from the speedy trial clock.  18 U.S.C. §3161(h)(1)(D).  "The plain terms

of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not." *Henderson v. United States*, 476 U.S. 321, 326-27 (1986).

Therefore, the record fails to reflect a violation of the Speedy Trial Act in this Case. On April 28, 2004, when petitioner pleaded not guilty plea to the initial indictment, his speedy trial clock began to run. Doc. No. 9. Fourteen days elapsed until May 12, 2004, when petitioner filed a motion for review of his detention order. Doc. No. 20. On July 1, 2004, after a hearing, the Court denied petitioner's motion. Doc. No. 28. This period of time is excluded from the speedy trial clock. *See United States v. Thomas*, 49 F.3d 253, 256 (6th Cir. 1995).[1] Trial commenced thirty-two days later, on August 2, 2004. Therefore, petitioner was brought to trial within the time period required under the Speedy Trial Act. He cannot establish the ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), due to his attorney's failure to file a motion to dismiss the charges against petitioner on this basis.

Claim one is without merit.

## Claim Two

Petitioner asserts that he was denied the effective assistance of counsel because his attorney erroneously advised him to proceed to trial rather than enter a guilty plea. In support of this claim, petitioner indicates as follows:

---

[1] On May 12, 2004, petitioner additionally filed a "Motion for Extension of Time to File pretrial motions." Doc. No. 19.

7

> [P]rior to my trial, my attorney told me that the government
> had offered me a plea agreement, whereby I would plead
> guilty to distribution [of] drugs in exchange for a sentence not
> to exceed 10 years.  In addition, counsel told me that if I
> cooperated, my sentence would be reduced further.  When I
> asked counsel what I should do, counsel told me that "There
> is no way the government can convict you."  Further, counsel
> told me that my sentence would not exceed the 10 year
> sentence offered by the government, even [if] I was found
> guilty following a jury trial.  Counsel repeatedly told me that
> I would not be convicted and that I should go to trial.

*Affidavit of Ramon Solano Rodriguez, Motion to Vacate Sentence,* Doc. 69-2, pp. 2-3.  Petitioner

further complains that his attorney failed to advise him that he could obtain a three level

reduction in his recommended sentence under the United States Sentencing Guidelines for

acceptance of responsibility if he pleaded guilty, and never told him that his sentence could

be enhanced if he testified at trial.  Petitioner states that his attorney told him he "had to

testify in order to tell the jury his version of the events."  *Memorandum in Support of Petition*,

at 20.  Petitioner seeks a two level reduction in his recommended sentence under the

United States Sentencing guidelines on this basis.  *Id.*

Additionally, petitioner alleges that defense counsel never advised him he could be

convicted on circumstantial evidence alone.  He complains that his attorney repeatedly

advised him against pleading guilty, because he would be exonerated at trial.  *See id.*

Petitioner states:

> [h]ad I known that the risks of proceeding to trial... and ... that
> my sentence could be enhanced for testifying, I would have
> never proceeded to trial but would have insisted on entering
> a plea of guilty pursuant to the governments proposed plea
> offer.

8

*Id.*

Petitioner makes related allegations in claim three, wherein he asserts that defense counsel failed to advise him of the risks of testifying on his own behalf, i.e., that he may face a sentence enhancement under the United States Sentencing Guidelines for obstruction of justice as a result of testifying on his own behalf.  He complains that his attorney never told him it was solely his decision as to whether to testify, but that  "he had to testify in order to tell the jury his version of the events."  As a result, petitioner complains that his sentence was enhanced for obstruction of justice.  Had he known he faced an enhanced sentence as a result of testifying on his own behalf, petitioner states  that "he would have never agreed to testify."  *Petition,* at 20.

In response to these allegations, respondent has submitted an affidavit from Attorney Javier Armengau, petitioner's defense counsel in this case, which indicates in relevant part as follows:

> 1. I represented Mr. Rodriguez before the Honorable Algenon Marbley in the United States District Court for the Southern District of Ohio;
>
> 2. Mr. Rodriguez was represented by Mr. Gerald T. Noel as well and Mr. Noel served as Co-Counsel;
>
> 3. Prior to the matter going to trial, I met with Mr. Rodriguez on several occasions to review the allegations and to explain his options;
>
> 4. I never told Mr. Rodriguez that "There is no way the Government can convict you";
>
> 5. I have never told a client that there was no way a

9

Government or State could convict them even in cases where I believed the evidence was questionable;

6, The Government did not offer Mr. Rodriguez a "plea agreement" whereby Mr. Rodriguez would plead guilty to distribution of drugs. There were discussions between myself and Mr. Kevin Kelley regarding a plea to the "house" count, which Mr. Rodriguez declined;

8. Mr. Rodriguez did not entertain the thought of a plea because he insisted he was not guilty of any crime.

9. . . . Counsel did advise Mr. Rodriguez that cooperation would result in a reduced sentence;

11. Mr. Rodriguez was advised that based on plea discussions and cooperation, in counsel's opinion, his ultimate sentence if resolved by plea would be less than 10 years. In fact counsel advised Mr. Rodriguez that a 5 – year sentence was not out of the question depending on several factors;

12. Counsel did explain "circumstantial evidence" [to] Mr. Rodriguez. In fact, Mr. Rodriguez kept stating to counsel that there was no evidence against him. He kept stating "No hay evidencias". His opinion was based on what he considered to be evidence. Counsel at that point explained the difference between direct evidence and circumstantial evidence.

*Affidavit of Javier H. Armengau, Exhibit to Respondent's Supplemental Answer*, Doc. 93-1, pp.

1-2.

Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill*, 474 U.S. at 58, 106 S.Ct. 366, 88 L.Ed.2d

> 203. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir.2001) (citing *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir.1988)).

*Humphress v. United States*, 398 F.3d 855, 858-59 (6th Cir. 2005).

> An attorney's failure to convey a plea offer satisfies the first prong of *Strickland. Griffin v. United States,* 330 F.3d 733, 737 (6th Cir.2003). Further, a substantial disparity between the plea offer and the potential sentence exposure constitutes strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer, despite earlier protestations of innocence. *See Magana v. Hofbauer*, 263 F.3d 542, 552-53 (6th Cir. 2001) (finding the difference between a ten- and twenty-year sentence significant); *United States v. Day*, 969 F.2d 39 (3d Cir.1992) (finding ineffective assistance of counsel when trial counsel mistakenly described the penalties at trial as ten years rather than the twenty-two years the defendant received at sentencing, and where a plea offer of five years had been made); *United States v. Gordon*, 156 F.3d 376, 377-81 (2d Cir.1998) (holding that the wide disparity between the ten-year sentence recommended by the plea agreement and the seventeen-and-a-half years the defendant did receive was objective evidence that a plea would have been accepted).

*Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003); *see also Griffin v. United States*, *supra*, 33 F.3d at 739 (evidentiary hearing warranted to determine whether defendant would have pleaded guilty where attorney failed to convey plea offer of five years and defendant sentenced to 156 months.) An attorney's failure to insist that his client accept the government's plea offer due to overwhelming evidence of guilt, however, does not constitute constitutionally ineffective assistance. *Smith v. United States, supra*, 348 F.3d at 552.

> The decision to plead guilty-first, last, and always-rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Id.* The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiations stage as follows:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Id.*, at 553, citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992); *see also Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003)(Failure of defense counsel to "provide professional guidance" regarding a defendant's sentencing exposure may constitute deficient assistance). An attorney's obligation to advise his client applies equally to the defendant who maintains his innocence of the charges, as other reasons may induce him to enter a guilty plea. *United States v. Williams*, 2009 WL 348805 (W.D. Tenn. Feb. 10, 2009), quoting *North Carolina v. Alford, supra*, 400 U.S. at 33.

> The Sixth Circuit has expressly declined to adopt a requirement that a convicted defendant establish by objective evidence that he would have pleaded guilty had his counsel com-

12

petently advised him. [*Griffin v. United States*, 330 F.3d at 737)] (citing *Dedvukivic v. Martin*, 36 Fed.Appx. 795, 798 (6th Cir. 2002(unpublished).  Thus, a court may rely on a defendant's self serving testimony that he would have accepted the plea agreement had his counsel sufficiently advised him.  *Id.*

*United States v. Williams, supra.*

Although the terms of any potential plea offer are not entirely clear from the record, it appears that petitioner would have faced a lesser sentence had he entered a guilty plea rather than proceeded to trial. Further, petitioner may have obtained a lesser sentence than that which was imposed, had he not chosen to testify on his own behalf, and as a result, not received a two level increase in his recommended sentence under the United States Sentencing Guidelines for Obstruction of Justice.  *See PreSentence Investigation Report*, at ¶¶49-51.  Therefore, because petitioner has alleged facts which, if true, may entitled him to relief, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hill v. Lockhart*, 474 U.S. 52, 59, (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988), and because there exists a factual dispute regarding his claims, *see Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007), citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999), the Magistrate Judge **RECOMMENDS** that counsel be appointed on petitioner's behalf to represent him at an evidentiary hearing on his claim that he was denied the effective assistance of counsel because his attorney failed to provide adequate advice pretrial regarding the sentencing ramifications of proceeding to trial and testifying on his own behalf and because his attorney advised him to go to trial in view of the lack of strength of the government's case against him as he would be sentenced the

13

same regardless.

## Claim Three

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to investigate and present witnesses, including his brother, who would have testified that he had no knowledge of any illegal drug activity in the house he rented on 150 S. Roys, and that he was not living in the house during the time period at issue. Petitioner additionally complains that his attorney failed to call as defense witnesses Juan Mason and Saul Hermosilla, who worked for him and would have testified that he was in Mexico in December of 2003, when Edna Salinas, his former girlfriend, permitted three unnamed men to move into the house on South Roys and sell drugs. According to petitioner, Mason and Hermosillo would have testified that they therefore moved out of the house and petitioner had no knowledge about the illegal drug activity which was taking place. *See Memorandum in Support of Petition*, at 18. Petitioner complains that his attorney failed to interview or call as a defense witness the owner of Gravely Drywall, who would have testified that petitioner performed construction, and was paid regularly in checks valuing thousands of dollars. Counsel further failed to submit such checks into evidence, submit documentation from his bank account, or obtain documents that would have verified petitioner was in Mexico during the time period at issue. *See id.*

In support of this claim, petitioner has submitted an affidavit from a friend, Adrian Salgado, which indicates in relevant part that during 2003, petitioner lived at 433 Harris Street, and in December 2003, rented a house on 150 S. Roys with Salinas. Salgado

indicates:

> Although the initial deposits and rent was paid by Rodriguez, he did not actually move into 150 S.Roys Avenue.
>
> Rodriguez left to visit his family in Mexico while the couple were still living on Harris Street on or about the third week of December.
>
> Upon his return to the United States, Rodriguez did not take up residence at 150 S. Roys Avenue.
>
> Instead, Rodriguez took a room with his brother, Juan Carlos Rodriguez on 447 Townsend Avenue in Columbus, Ohio.
>
> Rodriguez was not present when items in the Harris Street house were moved to 150 S. Roys Avenue.
>
> When Rodriguez returned from Mexico on or about February 2004, he elected not to move into 150 S. Roys Avenue due to an argument he had with Salinas in regard[] to two men who were unknown to him, had taken up residence in the house.
>
> Two individuals who worked with Rodriguez in the construction trade also lived in the house and he kept supplies in an attachment to the garage.
>
> I have never known Rodriguez to possess, use, or sell an illegal substance of any kind.
>
> I was not approached by Rodriguez's attorney at any time prior to trial....
>
> I would have been willing to testify in open court to these facts.

*Affidavit of Adrian Salgado, Exhibits to Motion to Expand Record*, Doc. No. 79. Petitioner also

has attached an affidavit from friends, Antonio Escalante, Enrique Robledo, Javier Gualito,

and Cassandra Thompson. These affidavits contains identical information to that of Adrian

Salgado.  *Affidavit of Antonio Escalante, Enrique Robledo, Javier Gualito, Cassandra Thompson, Exhibits to Motion to Expand Record*, Doc. No. 79.  Petitioner also has attached an affidavit from friends, Benjamin McKenzie and Jean Gail Grimm, which indicate, in addition, as follows:

> On or about the end of February, 2004, Rodriguez attempted to reconcile with Salinas in light of their previous argument about the unknown men at 150 S. Roys Avenue.
>
> Prior to March 17, 2004, Rodriguez told me numerous times he was planning to evict the unknown individuals and assume residence of the house.

*Affidavit of Benjamin McKenzie, Jean Gail Grimm, Exhibits to Motion to Expand Record*, Doc. No. 79.

In response to this allegation, defense counsel, Attorney Armengau, indicates that he interviewed petitioners brother "and as a result of the interview... elected not to call Mr. Rodriguez's brother."  *Affidavit of Javier H. Armengau*.  However, respondent has not provided any response from defense counsel in regard to counsel's failure to present any of the remaining defense witnesses or other documents allegedly requested by petitioner. In any event, the record fails to reflect that petitioner can establish prejudice, as that term is defined under *Strickland*.

In order to establish the constitutionally ineffective assistance of counsel, petitioner must demonstrate both that his attorney's performance was constitutionally inadequate, and that he was prejudiced thereby:

> First, the defendant must show that counsel's performance was

> deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington, supra,* 466 U.S. at 687; *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Petitioner testified that he came to the United States in 1991, and was a permanent resident who was self employed with Gravely Construction. *Trial Transcript*, Vol. III, at 15-16. His company made about $300,000.00 to $345,000.00 in 2003. *Id.*, at 17. On December 20, 2003, he signed a lease for 150 South Roys Avenue with his girlfriend, Edna Salinas. Id. He paid six months rent in advance so that he would get one month free. *Id.*, at 8. After

that, he went to Mexico to visit his family for seven weeks. *Id.* He returned to the United States on February 13, 2004. *Id.* His girlfriend and employees were responsible for moving his belongings into the rental home. *Id.* He did not return to Ohio until February 13, 2004. *Id.*, at 19. When he returned, three men were in the home with Salinas. *Id.*, at 24-25. He went to his brother's house on 447 Townsend Avenue. *Id.*, at 25. He returned to South Roys two days later, picked up some of his clothes, and returned to his brother's house. *Id.*, at 26. He thought that Salinas had also moved out of the house. *Id.*, at 27. He returned to the home on March 15, 2004, and again on March 17, 2004. *Id.*, at 27-28. The house was a mess. He went to sleep on the sofa. *Id.*, at 28. Police arrested him thereafter. *Id.*, at 30. He denied ever selling or arranging to sell or purchasing cocaine. *Id.*

Additionally, Mario DeSantis testified on cross examination that he rented the property to Salinas and petitioner in December 2003, and did not see or speak to petitioner in January when he called or went to the home due to reports of numerous vehicles coming and going from the property. *Trial Transcript, Vol. II*, at 43. Petitioner told DeSantis when he signed the lease agreement, that he was going to Mexico for several weeks to visit his family. *Id.*, at 49. DeSantis obtained two pay stubs from petitioner before he signed the lease agreement: One dated November 7, 2003, was for the amount of $9,833.86; the second, dated December 12, 2003, was for the amount of $5,851.68. *Id.*, at 47-48. However, petitioner's adjusted gross income for 2003 according to his federal tax return was only $10,590.00. His adjusted gross income for 2001 was $7,308.00. *Id.*, at 93, 97.

The District Court noted the following additional relevant facts in denying

18

petitioner's motion for judgment of acquittal and motion for a new trial:

On March 17, 2004, police officers observed two men sitting in a pick-up truck outside the house (on 150 South Roys). One of the men, Valente Mendoza, retrieved a package from the houses porch, got back into the pick-up truck, and drove away. The police followed the car to a nearby store and questioned Mendoza about the package.FN Mendoza opened the box and the police found 3 kilograms of cocaine. Early on the morning of March 18, 2004, the police searched through the garbage cans of 150 South Roys Avenue and found a utility bill and various other papers bearing the name "Ramon Rodriguez," a number of heat sealed bags containing some cocaine residue, and a small amount of marijuana. Based on these findings, the police obtained a search warrant for 150 South Roys Avenue. In the meantime, police officers conducting surveillance of the house observed four Hispanic men leave the residence at approximately 6:30 a.m., and saw Rodriguez leave the house somewhere between 9:30 and 9:45 a.m., locking the door behind him.

FN: The other man, who was sitting in the passenger seat, had left the area by the time the police began questioning Mendoza. Although Mendoza did not know the other man's real name, Mendoza testified that this man's nickname is El Perro. The government argued that El Perro was a participant in the conspiracy to sell drugs.

The police executed the search warrant shortly thereafter. The officers who were searching the master bedroom closet found a 20 guage shotgun in the closet and a tote bag containing a 9mm Intratech firearm and a half-kilogram of marijuana. The master bedroom also contained a 45 caliber Bersa handgun under a bed pillow, a dollar bill on the dresser surrounded by cocaine residue, a kilogram size wrapper commonly used to package cocaine under the night stand, and approximately $13,600 in currency inside a bag. The bedroom also contained money orders and work receipts bearing Rodriguez's name, a ledger containing a number of notations including Rodriguez's name and the address of 150 South Roys Avenue,FN Rodriguez's immigration packet containing his ID, and several

19

Western Union Receipts, two of which were dated January 25, 2004 and February 8, 2004, listing the "receiver" as Ramon Rodriguez.

The officers who were searching the basement found two heat sealers, a good deal of paperwork, including Rodriguezs tax returns, a National City Bank ("NCB") deposit slip showing a February 25, 2004 deposit for approximately $6,500 into Rodriguezs NCB account, and Rodriguez's NCB checkbook. The officers also found heat sealed bags, rubber bands, and a money counter in the dining room, along with several open boxes of baggies in the kitchen.  Officers searching a detached garage came across an unplugged refrigerator containing an electronic scale and 5.9 grams of cocaine base.

FN2: A government witness testified that the ledger contained several notations, including the name Negro Feo, the Defendant's name and address, and an account number for AEP, a number of addition and subtraction problems, the name Salome with a phone number underneath it, and the word "paid" written in Spanish ("pagada" or "pagadas").

. . .

The government demonstrated that Defendant's name was on the lease and that the narcotics and packaging materials were both in plain view and intermingled with Defendant's personal papers, such as his immigration packet.  Additionally, Defendant had easy access to the house, including the detached garage where over 5 grams of cocaine base was found and the police observed Defendant leaving 150 South Roys Avenue minutes before the search warrant's execution.

. . .

The government . . . proffered enough evidence to establish Defendants continued presence at the house, including Defendant's persona papers dated from early 2004, from which a jury could infer that Defendant was a constant presence at the house, and thus had control over and knowledge of the contents of the house.

. . .

Defendant agreed to allow two workers to live with him at 150 South Roys and . . . some of the workers' paperwork was found amongst the drug packaging materials.FN8

. . .

The government also proffered evidence... that Defendants paperwork placed him in or near the house in early 2004 – a direct contradiction to Defendant's testimony that he was either out of the country during this time or an infrequent visitor.FN9

FN8: Defendant testified that he intended to allow Juan Mason and Saul Hermosillo, two of his workers, live with him at 150 South Roys Avenue.  Defendant consistently neglected to provide their names to the landlord, despite several requests.  A government officer then testified that some of Hermosillo's paperwork was found amongst the evidence of drug distribution, including money order receipts.

FN9: Defendant explained that he was in Mexico from December 20, 200[3] through February 13, 2004, and his girlfriend, Edna Salinas ("Salinas) and his workers moved his belongings into the house.  He also stated that upon returning to the United States on February 13, 2004, he found Salinas in the residence with three men who Defendant did not know. Defendant and Salinas had a falling out, and he went to stay at his brother's home, going inside 150 South Roys Avenue only a few more times: (1) February 15, 2004, in an attempt to reconcile with Salinas; and (2) the night of March 17, 2004.  On March 17, 2004, Defendant stated that he visited the house late at night looking for Edna and stayed over because he did not want to drive home in an inebriated state.  Defendant also explained that he visited the detached garage every two to three days because he stored some work supplies there.  The government, on the other hand, offered evidence that Defendant was in fact present and storing personal items inside the house during early 2004, such as his Western Union receipts and his National City Bank paperwork.  The items were dated in Jan-

> uary and February 2004, a time during which Defendant testified that he was either in Mexico or a rare visitor to 150 South Roys Avenue.
>
> . . .
>
> Defendant's knowledge or his preference to remain deliberately ignorant could be inferred from the evidence of the drugs and various related materials found in plain view just minutes after Defendant exited the premises.

*Opinion and Order,* December 20, 2004, Doc. No. 45.

As discussed above, Petitioner testified to the same facts as those of his proposed defense witnesses. The evidence he complains his attorney failed to introduce at trial therefore would have been merely cumulative to evidence already submitted at trial. Further, it does not appear to have been disputed that petitioner went to Mexico shortly after renting the home on South Roys with his girlfriend. In any event, neither the fact that he visited Mexico shortly after signing the lease agreement for the house on South Roys, nor the testimony of the additional proposed defense witnesses or documentary evidence regarding his income would have assisted him in establishing his innocence of the charges against him, in view of other documentary evidence establishing his his presence in and connection to drug activity in the house. Additional testimony from defense witnesses indicating that petitioner had no knowledge of the drug activity taking place is of little weight in view of this documentary evidence, as well as evidence reflecting he was in the house, which was filled with drugs, drug packaging material, and firearms, as well as the storage area of the home. Additionally, as discussed, evidence reflected that his gross

income as reported on his federal income tax returns was minimal.  As noted by the United States Court of Appeals for the Sixth Circuit, he agreed to permit his employees (two of whom are also his proposed defense witnesses) live in the home, and their paperwork also was found amid evidence of illegal drug activity.  As to counsel's failure to call petitioner's brother as a defense witness, the record reflects that defense counsel spoke to the witness, and made a strategic decision not to call him as a defense witness.  In reviewing a claim of ineffective assistance of counsel, this Court must consider "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.*  In view of the record before this Court, such do not appear to be the circumstances here.  Further,  "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana, supra,* 350 U.S., at 101, 76 S.Ct., at 164. There are

> countless ways to provide effective assistance in any given
> case. Even the best criminal defense attorneys would not
> defend a particular client in the same way. *See Goodpaster, The
> Trial for Life: Effective Assistance of Counsel in Death Penalty
> Cases*, 58 N.Y.U.L.Rev. 299, 343 (1983).

*Id.*, at 689.

> In making that determination, the court should keep in mind
> that counsel's function, as elaborated in prevailing professional
> norms, is to make the adversarial testing process work in the
> particular case. At the same time, the court should recognize
> that counsel is strongly presumed to have rendered adequate
> assistance and made all significant decisions in the exercise of
> reasonable professional judgment.

*Id.*, at 690. Therefore, petitioner has failed to establish the ineffective assistance of counsel

due to his attorney's failure to call defense witnesses or submit additional documentation

regarding petitioner's income or his trip to Mexico under *Strickland's* two prong test.

## Claim Four

In claim four, petitioner asserts that he was denied the effective assistance of counsel

because his attorney failed to challenge the erroneous criminal history determination.

Petitioner complains that he improperly was assessed criminal history points on his

PreSentence Investigation Report for his November 2, 1999, Franklin County conviction for

operating a motor vehicle while intoxicated, his December 1, 1999, Franklin County

conviction on reckless operation of a motor vehicle, and his July 30, 2002, Franklin County

conviction on driving without a valid operator's license. *Petition*, at 21; *PreSentence

Investigation Report*, at ¶¶57, 58, 61.

Petitioner was sentenced under the 2004 edition of the United States Sentencing

Guidelines.  *PreSentence Investigation Report*, at ¶38.  On each of the convictions referred to by petitioner, his jail sentence was suspended for "one year "PNC probation."  *Id*., at ¶¶57, 58, 61.  U.S.S.G. §4A1.2(c)(1),[2] as it appeared at the time of petitioner's sentencing provided that he be assessed a criminal history points for each of these convictions, as he was sentenced on each to a term of probation of "at least one year."  U.S.S.G. §4A1.2(c)(2004).

---

[2]  The 2004 text of U.S.S.G. §4A1.2(c) provided in relevant part:

Sentences for all felony offenses are counted.  Sentences for misdemeanor and petty offenses are counted, except as follows:

(1) Sentences for the following prior offenses and offenses similar to them by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offenses was similar to an instant offense:

        Careless or reckless driving
        Contempt of court
        Disorderly conduct or disturbing the peace
        Driving without a license or with a revoked or suspended license
        False information to a police officer
        Fish and game violations
        Gambling
        Hindering or failure to obey a police officer
        Insufficient funds check
        Leaving the scene of an accident
        Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law)
        Non-support
        Prostitution
        Resisting arrest
        Trespassing

25

> After November 1, 2007, Amendment 709 defines criminal
> history to include only sentences for a term of probation
> of more than one year or a term of imprisonment of at least thirty
> days. See U.S.S.G. § 4A1.2(c)(1) (2007), Historical Note, 2007
> Amendments, Appendix C, Amendment 709.

*Burton-Lara v. United States*, 2009 WL 3156690 (M.D. Tenn. Sept. 30, 2009).  However,

counsel cannot be deemed to act in a constitutionally ineffective manner for failing to

predict the subsequent amendment to this provision of the United States Sentencing

Guidelines.  *Edgecombe v. United States*, 2006 WL 151895 (W.D. Michigan January 19, 2006)

*3, *citing United States v. Burgess*, 142 Fed. Appx. 232, 241 (6th Cir.2005) (failure to predict

Supreme Court's decision in Booker does not constitute ineffective assistance); Green v.

United States, 65 F.3d 546, 551 (6th Cir.1995) (lawyer's failure to predict Sixth Circuit's

approach to law did not constitute ineffective assistance of counsel); *United States v.

Gonzalez-Lerma*, 71 F.3d 1537, 1542 (10th Cir.1995) ("Defendant faults his former counsel not

for failing to find existing law, but for failing to predict future law. We agree ... that

clairvoyance is not a required attribute of effective representation."); *Nelson v. Estelle*, 642

F.2d 903, 908 (5th Cir.1981) (holding that "counsel is normally not expected to foresee

future new developments in the law").  Further, Amendment 709 is not listed as an

amendment that is to be applied retroactively such that petitioner would be entitled to a

reduction in his sentence.  *See* U.S.S.G. 1B1.10; *Spragling v. United States*, 2009 WL 2410475

at *5 (N.D. Ohio Aug. 4, 2009).[3] The Magistrate Judge is not persuaded that the amendment

---

[3]  Effective March 3, 2008, the United States Sentencing Guidelines Commission
enacted Amendment 713, modifying Section 1131.10(c) by listing additional amend-
ments that should be applied retroactively.  Amendment 709 was not among them.  *See*

may be retroactively applied in these proceedings, preliminarily, because the underlying

claim is waived, and petitioner has failed to establish cause for his procedural default in

failing to raise the claim on direct appeal, *Massaro v. United States*, 538 U.S. 500, 504 (2003);

*United States v. Frady*, 456 U.S. 152, 167-68 (1982), but also because the Court agrees with

other courts to consider the issue, which have concluded that Amendment 709 is a

clarifying amendment[4] that does not apply retroactively.[5]  Although the Sixth Circuit does

not appear to have addressed the issue of retroactivity in the context of Amendment 709,

every circuit to have considered the question has ruled that Amendment 709 does not

apply retroactively. See *United States v. Abusaid*, 2008 WL 4483422, * 2 (11th Cir.2008)

(Amendment 709 not retroactive because it is not listed in § 1B1.10(c)); *United States v.

Archer*, 282 Fed.Appx. 164, 169 (3rd Cir.2008) (Amendment 709 not given retroactive effect

under § 1B1.10(c)); *United States v. Marler*, 527 F.3d 874, 878 n. 1 (9th Cir.2008) (Amendment

_____

*Carson v. United States,* 2010 WL 2802958 at *2 n.1 (N.D. Ohio July 14, 2010).

[4]At the time the petition was filed, the petitioner argued that the Sentencing Commission had not yet made any determination as to whether Amendment 709 was to be applied retroactively. If the Commission had made the decision to apply the amendment retroactively it would have listed the amendment in Section 1131. 10(c) of the USSG, triggering the defendant's right to seek modification of sentence by filing a motion under 18 U.S.C. § 3582(c)(2). The Commission enacted Amendment 713, effective March 3, 2008, modifying Section 1131.10(c) by listing additional amendments that should be applied retroactively. Amendment 709 was not among the amendments listed in Section 1131.10(c), and, therefore, is not to be considered retroactive under 18 U.S.C. § 3582(c)(2). This does not preclude retroactive application of the amendment under § 2255, if the amendment is deemed to be clarifying and not substantive. *Carson v. U.S.,* 2010WL 2802958 (N.D. Ohio 2010).

[5] Petitioner has not referred to, and this Court is not aware of, any cases from the United States Court of Appeals for the Sixth Circuit addressing this issue.

709 does not apply retroactively); *United States v. Peters*, 524 F.3d 905, 907 (8th Cir.2008) (Amendment 709 not retroactive because it is not listed as such in § 1B1.10(c)); *United States v. Cofield*, 259 Fed.Appx. 575, 576 (4th Cir.2007) (Amendment 709 not retroactive because it is not listed as such in § 1B1.10(c)).  See also, *Polk v. United States*, 2009 WL 1065876 at *2, citing *United States v. Alexander,* 553 F.3d 591, 592-93 (7th Cir. 2009); *Lopez v. United States*, 2009 WL 383358 (M.D. Fla. February 13, 2009); see also *Carson v. United States*,  2010 WL 2802958 (N.D. Ohio July 14,2010), (reaching same conclusion).

Claim four is without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that counsel be appointed to represent petitioner at an evidentiary hearing on his claim that he was denied the effective assistance of counsel because his attorney failed to provide adequate advice pretrial regarding the sentencing ramifications of proceeding to trial and testifying on his own behalf and because his attorney advised him to go to trial in view of the lack of strength of the government's case against him as he would be sentenced the same regardless.   The Magistrate Judge further **RECOMMENDS** that the remainder of petitioner's claims be  **DISMISSED**.

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


s/Mark R. Abel
United States Magistrate Judge